IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAYSAN STEWART, | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | **CIVIL ACTION NO. 26-CV-2643** |
| | : | |
| KEVIN STEELE, *et al.*, | : | |
|     Defendants. | : | |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                                 **June 17, 2026**

Plaintiff Kaysan Q. Stewart, who is currently incarcerated at SCI Camp Hill, initiated this

pro se civil action alleging his rights were violated during a state court criminal prosecution.

Stewart has paid the filing fee for this case.  For the following reasons, the Amended Complaint[1]

will be dismissed pursuant to 28 U.S.C. § 1915A.  Stewart may file a second amended complaint

if he can cure the deficiencies noted below.

## I.      FACTUAL ALLEGATIONS[2]

Stewart brings claims under federal and state law.  Named as Defendants are:

Montgomery County Detectives Andrew Rook and Michael Laverty; Montgomery County

---

[1] On April 20, 2026, the Clerk's Office received Stewart's initial Complaint.  (Doc. No. 1.)
Because he failed to either pay the required fees or file an application to proceed *in forma pauperis* along
with a prison account statement, the Court directed him to do so.  (Doc. No. 3.)  On May 7, 2026, the
Court received an Amended Complaint (Doc. No. 4), and on May 11, 2026, the Court received the filing
fees (*see* Doc. No. 5).  The Amended Complaint is the operative pleading in this case.  *See Garrett v.
Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("In general, an amended pleading supersedes the
original pleading and renders the original pleading a nullity.  Thus, the most recently filed amended
complaint becomes the operative pleading." (citations omitted)).  The Court adopts the sequential
pagination supplied to Stewart's filings by the CM/ECF docketing system.

[2] The factual allegations in this Memorandum are taken from the Amended Complaint.  (Doc. No.
4.)  Additionally, the Court includes facts reflected in publicly available state court records, of which this
Court may take judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

District Attorney Kevin Steele; Montgomery County Assistant District Attorneys Karla Pisarcik, Paul Pruitt, and William H. Highland; Montgomery County Chief Detective Mark Bernstiel; and Montgomery County. (Doc. No. 4 at 3–4.) Defendants are sued in their official and individual capacities. (*Id.*)

The allegations in the Amended Complaint are convoluted. Stewart alleges that he and his family were sleeping at their residence in Norristown, Pennsylvania, on June 5, 2025 at 6:30 a.m., when the Narcotics Team of the Montgomery County Detective Bureau "pounded on the front door" of the home and demanded entry. (*Id.* at 4–5.) The team "viciously used force immediately and violently handcuffed a 13 year old minor (female) while pointing firearms, then forced [Stewart's] grandmother . . . from the second floor to the first floor." (*Id.* at 5.) Stewart descended from the third floor to the first floor, where officers "violently point[ed] firearms" at him. (*Id.*) Stewart contends that he was then arrested without probable cause and transferred to the Montgomery County Correctional facility. (*Id.*) He was "charged with Corrupt Organization charges due to a Pennsylvania Wiretapping & Electronic Surveillance Act investigation by Defendants employed by the County of Montgomery, Montgomery County Detective Bureau, overseen by the Montgomery County District Attorney Office." (*Id.* at 5–6.) Twenty or more individuals were arrested for participating in the purported "Corrupt Organization." (*Id.* at 6.)

Stewart asserts that his arrest was made pursuant to "an erroneous, misleading, fabricated, false report" by Defendants Rook and Laverty which "falsely stated and mislead crimes charged, fabricated identity along with omissions not yet known about" Stewart's residence. (*Id.*) According to Stewart, the charges were based on a fabricated Affidavit of Probable Cause that "displayed excessive and unlawful derivative interception transcripts." (*Id.*)

2

He also contends that "Defendants" could have ascertained the falsity of the charges had they exercised reasonable due diligence in performing their duties.  (*Id.*)

On August 11, 2025, a preliminary hearing was held, at which ADAs Pisarcik and Pruitt, along with Detective Rook, allegedly acted together to use "unauthorized, illegally obtained wiretap content" against Stewart in violation of the Commonwealth Attorneys Act ("CAA"), 71 P.S. § 732-205(b).  (*Id.* at 6–7.)  Stewart contends that by proceeding with prosecution of the criminal charges, Defendants Pisarcik, Pruitt, and Rook violated his Fourth Amendment rights and Fourteenth Amendment due process rights.  (*Id.* at 7.)

On December 1, 2025, Stewart received pretrial discovery containing the evidence of the wiretap investigation.  (*Id.*)  He contends that "[t]here was no documentary record of the Pennsylvania Office of Attorney General delegating his authority in some formal capacity authorizing the application to a judge for the order approving the interception of the communications involved herein."  (*Id.*)  He further claims that ADA Pisarcik "proceeded to prosecute preliminary hearings and file criminal informations of around 20 or more individuals, relating to corrupt organization drug offenses, without concurrent prosecutorial jurisdiction with the Pennsylvania Office of Attorney General."  (*Id.* at 8.)  Stewart asserts that, as a result, all the resulting arrests were invalid and in violation of the CAA.  (*Id.*)

Similarly, Stewart contends that the discovery he received demonstrates that Detectives Rook and Laverty led an "unlawful" wiretap investigation without "the 'involvement or assistance from the Pennsylvania State Police Department' as directed in the applications for approval to intercept the communications involved herein" that were authorized by District Attorney Steele.  (*Id.*)  He further claims that Detectives Rook and Laverty knew at the time of Stewart's arrest, and afterward, that "physical evidence they had collected in connection with the

3

charges brought against . . . [Stewart] was inconsistent with his guilt" and that there was no probable cause to arrest him.  (*Id.* at 8–9.)  According to Stewart, "all Defendants" acted in concert to violate his rights under the United States Constitution and state law.  (*See id.* at 9–10.)  And he seeks millions of dollars in damages.  (*See id.* at 13–14.)

The publicly available state court docket for Stewart's criminal prosecution shows that Stewart was initially charged with twenty counts, including corrupt organization charges and various drug charges.  *See Commonwealth v. Stewart*, CP-46-CR-0004171-2025 (Pa. Ct. Comm. Pl. Montgomery Cnty.).  On May 11, 2026, Stewart entered into a negotiated guilty plea, pursuant to which he pleaded guilty to a disorderly conduct charge, 18 Pa. Cons. Stat. § 5503(a)(4), and the balance of the charges were dismissed, *nolle prossed*, or withdrawn, *see Commonwealth v. Stewart*, CP-46-CR-0004171-2025.  Although the Amended Complaint is not dated, it was filed with the Court before the entry of the guilty plea.  (*See* Doc. No. 4.)  Stewart is currently incarcerated at SCI Camp Hill, awaiting sentencing.  (*See* Doc. No. 6); *Commonwealth v. Stewart*, CP-46-CR-0004171-2025.

## II.    STANDARD OF REVIEW

Although Stewart paid the filing fee in full, the Court has the authority to screen his Amended Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*).  Section 1915A requires the Court to "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is

4

frivolous, malicious, or fails to state a claim upon which relief may be granted." *Id.*

§ 1915A(b)(1). Likewise, the court must dismiss a complaint that "seeks monetary relief from a

defendant who is immune from such relief." *Id.* § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same

standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See*

*Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020); *see also Tourscher v. McCullough*, 184

F.3d 236, 240 (3d Cir. 1999). This standard requires the Court to determine whether the

complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 566 (2007)); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). At

the screening stage, the Court will accept the facts alleged in a pro se complaint as true, draw all

reasonable inferences in the plaintiff's favor, and ask only whether that complaint contains facts

sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021),

*abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir.

2024).

As Stewart is proceeding pro se, the Court construes the allegations in the Amended

Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay*

*Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). Nonetheless, "pro se litigants still must

allege sufficient facts in their complaints to support a claim." *Id.* (citation omitted). Conclusory

allegations do not suffice. *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986

F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the

conclusion to an ultimate legal issue."). Additionally, the Court must review the Amended

Complaint and dismiss the matter if it determines that subject matter jurisdiction is lacking. *See*

Fed. R. Civ. P. 12(h)(3); *Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").

## III.   DISCUSSION

The allegations in the Amended Complaint are convoluted, and Stewart invokes a litany of legal concepts under federal and state law, which adds to the confusion. (*See generally* Doc. No. 4.)  Liberally construing the allegations contained therein, the Amended Complaint is best understood as presenting Fourth Amendment malicious prosecution claims,[3] Fourteenth Amendment fabrication of evidence claims, federal conspiracy claims, and state law claims.[4]

---

[3] The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  Stewart uses a variety of terms, including false arrest, false imprisonment, malicious prosecution, and others, to assert that this Fourth Amendment rights were violated during his arrest and prosecution. (*See, e.g.*, Doc. No. 4 at 10–13.)  However, "[a]s the Supreme Court has explained, claims for false arrest challenge 'detention without legal process,' while malicious prosecution involves seizure 'pursuant to legal process.'" *Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 303 (3d Cir. 2024) (first quoting *Wallace v. Kato*, 549 U.S. 384, 389 (2007); then quoting *Thompson v. Clark*, 596 U.S. 36, 42 (2022)).  "If the plaintiff is held pursuant to legal process, then his proper claim is a malicious prosecution claim, which is a claim involving the 'wrongful institution of legal process' (not the absence of legal process)." *Voorhis v. Ginkel*, No. 24-2859, 2025 WL 2556241, at *2 (3d Cir. Sept. 5, 2025) (quoting *Wallace*, 549 U.S. at 390).  The Court understands Stewart to allege that he was arrested on June 5, 2025, pursuant to a warrant that was not supported by probable cause. (*See* Doc. No. 4 at 4–6); *see also Commonwealth v. Stewart*, MJ-38109-CR-0000184-2025 (listing criminal complaint filed on June 4, 2025).  Consequently, his Fourth Amendment claims sound in malicious prosecution and will be addressed under that standard.

[4] Stewart also lists the First and Eighth Amendments as bases for his claims. (*See, e.g.*, Doc. No. 4 at 2.)  But Stewart does not allege any facts that would suggest a violation of his First or Eighth Amendments rights, and passing references to legal provisions are insufficient to bring a plausible constitutional claim before the Court.  *See Higgins v. Bayada Home Health Care Inc.*, 62 F.4th 755, 763 (3d Cir. 2023) ("A passing reference to an issue will not suffice to bring that issue before this court." (cleaned up) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994))).  Accordingly, any claim based on a violation of the First or Eighth Amendment will be dismissed.

Additionally, to the extent that Stewart is raising claims based on any injuries suffered by the minor who was in the home on June 5, 2025, when he was arrested (*see* Doc. No. 4 at 10–11), Stewart lacks standing as to those claims, as he may not raise claims based on injuries sustained by another. *See Township of Lyndhurst v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert

6

Even under a liberal reading of the Amended Complaint, however, Stewart has failed to present a plausible claim.  The Court will address the pleading deficiencies below.

### A.  Federal Claims

The vehicle by which federal constitutional claims may be brought against state actors in federal court is 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).  Local governments and municipalities are considered persons under § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

### 1.  Individual Capacity Claims Against DA Steele and ADAs Pisarcik, Pruitt, and Highland

The Court understands Stewart to contend that the DA and ADAs overseeing his criminal case violated the Pennsylvania CAA and his federal constitutional rights in prosecuting the state court case against him.  He alleges that DA Steele authorized the "applications" that were used by Detectives Rook and Laverty.  (*See* Doc No. 4 at 8.)  Stewart also states that at the preliminary hearing on August 11, 2025, ADAs Pisarcik and Pruitt, along with Detective Rook, acted to use "unauthorized, illegally obtained wiretap content" against him in violation of the CAA and that by proceeding with the charges, Defendants Pisarcik, Pruitt, and Rook violated his Fourth Amendment rights and Fourteenth Amendment due process rights.  (*Id.* at 6–7.)  Stewart further claims that ADA Pisarcik prosecuted the case by participating in the preliminary hearing

---

his or her own legal interests rather than those of a third party." (quotation marks and citation omitted)).  Stewart also could not assert claims on behalf of the minor.  *See* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein."); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882–83 (3d Cir. 1991) (a pro se litigant who is not an attorney may not pursue claims on behalf of anyone other than himself).

and filing informations relating to corrupt organization drug offenses "without concurrent prosecutorial jurisdiction" with the Pennsylvania AG because there is "no documentary record" of the AG "delegating his authority in some formal capacity authorizing the application to a judge for the order approving the interception of the communications involved herein." (*Id.* at 7, 8.)  Stewart concludes that, as a result, his arrest was invalid and in violation of the CAA, specifically 71 P.S. §§ 732-205(a)(2), (a)(6), and (b). (*Id.*).  The Court considers Stewart's CAA claims before addressing his constitutional claims against the prosecutors.

### a.    CAA Claims

The enactment of the CAA in 1980 "made it clear that the powers of the state Attorney General are no longer an emanation from some bed of common law precepts, but are . . . strictly a matter of legislative designation and enumeration." *Commonwealth v. Carsia*, 517 A.2d 956, 958 (1986).  Thus, "[t]he Attorney General's criminal authority is limited." *Commonwealth ex rel. Krasner v. Att'y Gen.*, 309 A.3d 265, 274 (Pa. Commw. Ct. 2024).  Section 205(a) of the Act provides the Attorney General with the authority to prosecute certain cases in county criminal court. *See* 71 Pa. Cons. Stat. § 732-205(a)(1)–(8).  Section 205(b) also provides that the "[t]he Attorney General shall have the concurrent prosecutorial jurisdiction with the district attorney" in specific situations. *See* 71 Pa. Cons. Stat. § 732-205(b).  Relevant here, the AG and the county district attorneys have concurrent prosecutorial jurisdiction for criminal charges involving corrupt organizations set forth in 18 Pa. Cons. Stat. § 911. *See* 71 Pa. Cons. Stat. §§ 732-205(a)(2); 732-205(b).[5]  However, a violation of the CAA does not, in itself, provide a basis for a § 1983 claim because it does not create a protectible liberty interest or property interest. *See*

---

[5] The section of the Pennsylvania Crimes Code pertaining to corrupt organizations also provides that the Attorney General and county district attorneys have concurrent jurisdiction to institute criminal proceedings under the provisions of that section. *See* 18 Pa. Cons. Stat. § 911(e).

*Voicenet Commc'ns, Inc. v. Corbett*, No. 04-1318, 2006 WL 2506318, at *10–11 (E.D. Pa. Aug. 30, 2006) (stating that the violation of a state law only gives rise to a § 1983 claim if the violation implicates a federal constitutional right).  Thus, even assuming *arguendo* that any of the named Defendants could violate the CAA, which governs the authority of the AG, Stewart cannot state a due process claim for noncompliance with the CAA.  *See id.* at *11.

### b.      Fourth and Fourteenth Amendment Claims

Stewart likewise may not proceed on for his Fourth Amendment and Fourteenth Amendment claims against ADAs Pisarcik, Pruitt, and Highland.  As an initial matter, Stewart does not describe any actions taken by ADA Highland, other than to state that he replaced ADA Pisarcik and, at the time of the writing of the Amended Complaint, continued the prosecution. (*See* Doc. No. 4 at 3.)  Nonetheless, the claims Stewart seeks to bring against ADAs Pisarcik, Pruitt, and Highland are based on their actions taken during the prosecution of the state criminal case.  It is well settled that prosecutors are entitled to absolute immunity from liability for damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case."  *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976); *see also Roberts v. Lau*, 90 F.4th 618, 624 (3d Cir. 2024) ("Prosecutors . . . are absolutely immune from liability under § 1983 for engaging in conduct that serves a quasi-judicial function.").

"[W]hether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation."  *Yarris v. County of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006).  Absolute immunity extends to the decision to initiate a prosecution, including "soliciting false testimony from witnesses in grand jury proceedings and probable

cause hearings," presenting a state's case at trial, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (quotation marks and citations omitted); *see also Sanders v. City of Erie*, No. 26-1135, 2026 WL 1428876, at *2 (3d Cir. May 21, 2026) ("[A] district attorney acting 'within the scope of his duties in initiating and pursuing a criminal prosecution' is immune from suit, even when a litigant alleges a lack of probable cause." (quoting *Kalina v. Fletcher*, 522 U.S. 118, 124 (1997)). "[P]rosecutors [also] are entitled to absolute immunity from claims for damages related to their roles in choosing when and whether to dismiss charges or withdrawal [sic] an arrest warrant lodged against a defendant." *Garcia v. Phila. Dist. Attorney's Off.*, No. 23-1224, 2023 WL 3750604, at *2 (3d Cir. June 1, 2023) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)), *cert. denied*, 144 S. Ct. 850 (2024). Moreover, district attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in initiating and pursuing a prosecution on behalf of the Commonwealth, and in seeking an arrest warrant. *See Imbler*, 424 U.S. at 430–31; *Van de Kamp v. Goldstein*, 555 U.S. 335, 348–49 (2009); *Kalina*, 522 U.S. at 129.

Because Stewart's claims against ADAs Pisarcik, Pruitt, and Highland are based upon actions taken in a prosecutorial function in the judicial phase of Stewart's state criminal proceedings, each is entitled to absolute immunity. Accordingly, the Fourth and Fourteenth Amendment claims against Defendants Pisarcik, Pruitt, and Highland in their individual capacities will be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(2).[6]

---

[6] As to DA Steele, Stewart alleges only that he was the duly elected District Attorney of Montgomery County (*see* Doc. No. 4 at 3), and that Steele authorized "applications" that were used by Detectives Rook and Laverty (*see id.* at 8). These allegations do not sufficiently describe the actions that DA Steele is alleged to have taken in violation of Stewart's constitutional rights. In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, meaning a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims brought against that defendant. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a

### 2.      Individual Capacity Claims Against Detectives Rook and Laverty

Next, the Court understands Stewart to present Fourth Amendment malicious prosecution claims and Fourteenth Amendment fabrication of evidence claims against Detectives Rook and Laverty.  Specifically, Stewart asserts that his arrest was made pursuant to "an erroneous, misleading, fabricated, false report" by Defendants Rook and Laverty which "falsely stated and mislead crimes charged, fabricated identity along with omissions not yet known about" Stewart's residence.  (Doc. No. 4 at 6.)  According to Stewart, the charges were based on a fabricated affidavit of probable cause, which "displayed excessive and unlawful derivative interception transcripts."  (*Id.*)  He also contends that "Defendants" could have ascertained the falsity of the charges had they exercised reasonable due diligence in performing their duties.  (*Id.*)

Stewart further avers that Detective Rook acted with ADAs Pisarcik and Pruitt to use "unauthorized, illegally obtained wiretap content" against him at the preliminary hearing on August 11, 2025.  (*Id.* at 6–7.)  Additionally, he asserts that the evidence of the wiretap investigation that he received in December 2025 contained "no documentary record of the Pennsylvania Office of Attorney General delegating his authority in some formal capacity authorizing the application to a judge for the order approving the interception of the communications involved herein."  (*Id.*)  Stewart concludes that the discovery he received demonstrates that Detectives Rook and Laverty led an "unlawful" wiretap investigation without "the 'involvement or assistance from the Pennsylvania State Police Department' as directed in the applications for approval to intercept the communications involved herein" that were

_____

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Thus, a proper complaint explains what each defendant did or did not do with respect to the alleged constitutional harms.  It is possible that DA Steele would be entitled to prosecutorial immunity from Stewart's claims, but because Stewart does not describe DA Steele's actions with sufficient specificity, the individual capacity claims against DA Steele will be dismissed without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

authorized by DA Steele.  (*Id.*)  He further claims that Detectives Rook and Laverty knew at the time of Stewart's arrest, as well as thereafter, that "physical evidence they had collected in connection with the charges brought against . . . [him] was inconsistent with his guilt" and that there was no probable cause to arrest him.  (*Id.* at 8–9.)

Based on these allegations, the Court understands Stewart to present Fourth Amendment malicious prosecution claims and Fourteenth Amendment fabrication of evidence claims against Detectives Rook and Laverty.

### a.      Malicious Prosecution

To state a Fourth Amendment malicious prosecution claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of his person.  *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U. S. 36, 43, and n.2 (2022)).  A malicious prosecution claim under § 1983 has five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause;[7] (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to

---

[7] For the "lack of probable cause" element, where an arrest is made pursuant to a warrant or a previously sworn criminal complaint, a plaintiff must allege plausibly "(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause."  *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (quotation marks and citation omitted); *Pinkney v. Meadville*, 95 F.4th 743, 748 (3d Cir. 2024) (same); *see also Evans v. Newark City*, 152 F.4th 537, 545–47 (3d Cir. 2025) (discussing "lack of probable cause" element).  The existence of probable cause is typically a question of fact for a jury, unless the evidence "reasonably would not support a contrary factual finding," in which case the court may determine the existence of probable cause as a matter of law.  *Basile v. Township of Smith*, 752 F. Supp. 2d 643, 651 (W.D. Pa. 2010) (granting Rule 12(b)(6) motion in part and dismissing false arrest claim with leave to amend (citing *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788–89 (3d Cir. 2000)); *see also Slack v. McHugh*, No. 24-2153, 2025 WL 2753671, at *2 (3d Cir. Sept. 29, 2025) ("[A] plaintiff must adequately allege a lack of probable cause to avoid a Rule 12(b)(6) dismissal" for either a false arrest or malicious prosecution claim).

12

justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020) (quotation marks and citation omitted). "Probable cause exists if there is a fair probability that the person committed the crime at issue." *Id.* at 199 (quotations omitted).

The Amended Complaint does not present sufficient facts that would permit the Court to draw the reasonable inference that either Detective Rook or Detective Laverty engaged in malicious prosecution. Stewart repeatedly asserts that he was arrested without probable cause, but he does not allege any facts in support of that assertion. As stated earlier in this Memorandum, the Court must determine whether Stewart's Amended Complaint contains sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556) (emphasis added). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation marks and citations omitted). And it requires more than "unsupported conclusions or legal conclusions couched as factual allegations." *Falcone v. Dickstein*, 92 F.4th 193, 202 (3d Cir. 2024); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (noting that the reviewing court is not required "to accept as true unsupported conclusions and unwarranted inferences" (citations omitted)).

Even under a liberal construction of the Amended Complaint, the allegations against Detectives Rook and Laverty fail to meet this standard with respect to the elements of a

13

malicious prosecution claim.  For example, as to the third and fourth elements (lack of probable cause and malice), Stewart does not allege what facts were known to the detectives, identify which statements in the affidavit of probable cause were allegedly false, explain what (if any) information was known but not included in the affidavit that would lead a reasonable person to think Stewart did not commit the crimes charged, or otherwise provide any context for why it was unreasonable to pursue the criminal charges against him.[8]  Accordingly, the malicious prosecution claims against the detectives must be dismissed because they are not plausible as pleaded.  *See, e.g.*, *Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing malicious prosecution claims because the plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" and instead, generally alleged that all allegations against them in the underlying criminal proceedings were false).

### b.      Fabrication of Evidence

Turning to Stewart's claims for fabrication of evidence, "[d]ue process forbids the government from using 'falsified evidence . . . as a basis to initiate the prosecution of a defendant.'"  *Dalal v. Molinelli*, No. 24-2649, 2026 WL 579387, at *6 (3d Cir. Mar. 2, 2026) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 289 (3d Cir. 2014)).  A criminal defendant who has been convicted at trial "has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the

---

[8] As for the second element, a "favorable termination" occurs when a prosecution ends "without a conviction."  *Thompson*, 596 U.S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence.  A plaintiff need only show that the criminal prosecution ended without a conviction.").  The publicly available state court docket demonstrates that Stewart entered into a negotiated guilty plea pursuant to which most of the charges were dismissed, *nolle prossed*, or withdrawn.  *See Commonwealth v. Stewart*, CP-46-CR-0004171-2025.  However, because the Amended Complaint was filed before the guilty plea was entered, Stewart does not address this element either.

defendant would not have been convicted." *Halsey*, 750 F.3d at 294.  Additionally, "an acquitted criminal defendant may have a stand-alone fabricated evidence claim against state actors under the due process clause of the Fourteenth Amendment if there is a reasonable likelihood that, absent that fabricated evidence, the defendant would not have been criminally charged." *See Black v. Montgomery County*, 835 F.3d 358, 371 (3d Cir. 2016).  The "reasonable likelihood" standard requires that a plaintiff draw a "meaningful connection" between the due process injury and the use of fabricated evidence against him. *Id.* at 371 (citations omitted).  "[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong." *Id.* (citation omitted).

While Stewart alleges that the affidavit of probable cause in support of the arrest warrant contained fabricated evidence, he does not offer any facts in support of this assertion. (*See generally* Doc. No. 4 at 6–8.)  In other words, he does not say in his Amended Complaint what the "evidence" was that he claims the detectives fabricated.  Stewart simply does not present sufficient facts from which a reasonable inference can be drawn that either Detective Rook or Detective Laverty violated his Fourteenth Amendment rights.  Accordingly, this claim will be dismissed because it is wholly conclusory and undeveloped and does not meet the *Iqbal* pleading standard.

### 3.    Individual Claims for Supervisory Liability Against Chief Detective Bernstiel

Stewart's claims against Montgomery County Chief Detective Mark Bernstiel also are not plausible.  A "defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode*, 845 F.2d at 1207; *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated

15

the Constitution"); *Jutrowski*, 904 F.3d at 290 ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)). Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.'  However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))).  Rather, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).

There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be personally liable if he or she "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).[9]  "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed

---

[9] "Failure to" claims, such as a failure to train are generally considered a subcategory of policy or practice liability. *Barkes*, 766 F.3d at 316–17 (citation omitted).  A claim for supervisory liability or liability based upon a failure to train involves four elements: (1) that an existing policy created an unreasonable risk of constitutional injury; (2) the supervisor was aware of this unreasonable risk; (3) the supervisor was indifferent to the risk; and (4) the injury resulted from the policy or practice. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989); *see also Chavarriaga v. N.J. Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (same).

16

others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Township*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Stewart alleges only that Chief Detective Bernstiel was the commanding officer of Defendants Rook and Laverty, and was responsible for their training, supervision, and conduct, as well as for enforcing the regulations of the Montgomery County Detective Bureau.  (*See* Doc. No. 4 at 3–4.)  Thus, Stewart has not plausibly alleged that Detective Bernstiel established and maintained a policy, practice, or custom with deliberate indifference that caused constitutional harm, nor has he plausibly alleged Detective Bernstiel's personal involvement in any alleged underlying constitutional violation.  *See Iqbal*, 556 U.S. at 678; *see also Jankowski v. Lellock*, 649 F. App'x 184, 188 (3d Cir. 2016) (affirming dismissal of failure-to-train claim "relegated to a single sentence in the complaint" as "merely a rote recitation of a cause of action coupled with a legal conclusion" that was insufficient to satisfy the pleading standard).

Further, a supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisory official.  *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation).  As discussed above, Stewart has not plausibly alleged an underlying constitutional violation by Detectives Rook or Laverty.  Accordingly, any individual capacity claim against Detective Bernstiel is not plausible and will be dismissed.

17

### 4.    Individual Capacity Conspiracy Claims Against Various Defendants

Stewart alleges throughout the Amended Complaint that the various Defendants acted together to violate his rights.  (*See, e.g.*, Doc. No. 4 at 4, 9.)  The elements of a § 1983 claim of conspiracy to violate federal civil rights are that "(1) two or more persons conspire to deprive any person of constitutional rights; (2) one or more of the conspirators performs any overt act in furtherance of the conspiracy; and (3) that overt act injures the plaintiff in his person or property or deprives the plaintiff of any right or privilege of a citizen of the United States, with the added gloss under § 1983 that the conspirators act under the color of state law." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 294 n.15 (3d Cir. 2018) (cleaned up) (quoting *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151, 162 (3d Cir. 2001)).  "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citations omitted).  "[A] bare assertion of conspiracy will not suffice." *Twombly*, 550 U.S. at 556.  Here, Stewart has presented no factual allegations to support conspiracy claims; therefore, his conspiracy claims will be dismissed.  *See Cromwell v. Fichter*, No. 22-3169, 2023 WL 3734969, at *1 (3d Cir. May 31, 2023) (*per curiam*) (affirming dismissal where plaintiff presented no factual allegations to support a conspiracy claim).[10]

---

[10] Stewart also references 42 U.S.C. § 1985 in connection with his conspiracy claims.  (*See* Doc. No. 4 at 2.)  Nothing in Stewart's allegations plausibly suggests that he was the target of race or class based discriminatory animus designed to deprive him of the equal protection of the laws, as would be necessary to proceed on a claim under that provision.  *See Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) ("[T]he reach of section 1985(3) is limited to private conspiracies predicated on 'racial, or perhaps otherwise class based, invidiously discriminatory animus.'" (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971))).

##### 5.    Official Capacity and Municipal Liability Claims

Stewart brings § 1983 claims against Montgomery County, as well as claims against the various Defendants in their official capacities.  Claims against municipal officials named in their official capacities are indistinguishable from, and duplicative of, claims against the municipality that employs them.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55)).  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.* (citation omitted).

A municipality, such as Montgomery County, or any other suable municipal entity, is not vicariously liable under § 1983 for the actions of its employees on a theory of *respondeat superior*.  *See Monell*, 436 U.S. at 691; *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (stating "local governments are responsible only for 'their *own* illegal acts'" (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)).  There are two ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (cleaned up).  "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."  *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  "A plaintiff must also

19

allege that the policy or custom was the 'proximate cause' of his injuries." *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.* (citation omitted).  By contrast, a plaintiff whose claim is predicated on a failure or inadequacy must allege a failure that amounts to deliberate indifference on the part of the municipality. *Forrest*, 930 F.3d at 106 (citation omitted).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (citing *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999)).

Here, Stewart has failed to allege a municipal policy or custom, or deliberate indifference attributable to the municipality.  Accordingly, neither Stewart's claims against Montgomery County nor his claims against the Defendants in their official capacity meet the *Iqbal* pleading standard, and they too will be dismissed.

### B.     State Law Claims

Because the Court has dismissed Stewart's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims he seeks to raise. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,'" which "means that, unless there is some other basis for jurisdiction, no plaintiff may be a citizen of the same state as any defendant." *Lincoln Benefit*

20

*Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)).  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa*, LLC, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  It is the plaintiff's burden to establish diversity of citizenship.  *Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *see also Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the parties and that the amount in controversy requirement has been met).

Stewart has not met his burden.  Stewart states that he resided in Norristown, Pennsylvania, prior to his arrest.  (Doc. No. 4 at 2.)  He does not allege the citizenship of the individual Defendants, but he is suing Montgomery County, Pennsylvania, and various officials of that municipality, which suggests that diversity is lacking.  Accordingly, Stewart has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue and all state law claims will be dismissed for lack of subject matter jurisdiction.[11]

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss the individual capacity claims against ADAs Pisarcik, Pruitt, and Highland with prejudice pursuant to 28 U.S.C. § 1915A(b)(2) based

---

[11] Stewart is also warned that many of his state law claims seemed poised to fail.  For example, to the extent Stewart seeks damages for a violation of the Pennsylvania Constitution (*see* Doc. No. 4 at 12), those claims fail as a matter of law because "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state

on prosecutorial immunity.  All other federal claims will be dismissed without prejudice pursuant

to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.  All state law claims will be dismissed

without prejudice for lack of subject matter jurisdiction.

An appropriate Order follows regarding amendment.

---

constitution." *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (citing *Gary v. Braddock Cemetery*, 517 F.3d 195, 207 n.4 (3d Cir. 2008)); *see also Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution."); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." (citation omitted)).  In addition, Stewart likely cannot proceed on state tort law claims against the DA and ADAs under the facts alleged in the Amended Complaint.  In Pennsylvania, common law tort immunity protects "high public officials," including district attorneys and assistant district attorneys, from suit when acting in the scope of their official duties and authority, as the individual Defendants were in pursuing Stewart's prosecution. *Poteat v. Lydon*, 2023 WL 6620368, at *3 (3d Cir. 2023) (citing *Heller v. Fulare*, 454 F.3d 174, 177 (3d Cir. 2006); *Durham v. McElynn*, 772 A.2d 68, 69-70 (Pa. 2001)), *cert. denied*, 144 S. Ct. 1123 (2024); *see also Harris v. Krasner*, No. 23-2068, 2024 WL 2861848, at *4 (3d Cir. June 6, 2024) (stating that doctrine of high official immunity applies to claims for intentional infliction of emotional distress and to district attorneys and assistant district attorneys); *Johnson v. City of Reading*, No. 21-4860, 2023 WL 1783775, at *16 n.23 (E.D. Pa. Feb. 6, 2023) ("The standard used to determine who qualifies as a 'high public official' under Pennsylvania common law (1) depends on the nature of their duties, (2) the importance of their office, and (3) whether the role has policy-making functions.  The Pennsylvania Supreme Court has held that District Attorneys and Assistant District Attorneys qualify as a high official for purposes of immunity." (citations omitted)); *Wilson v. City of Philadelphia*, No. 21-2057, 2023 WL 5186258, at *8 (E.D. Pa. Aug. 11, 2023) (stating that because the ADA, and by extension, DA, were participating in "prosecutorial" activity that was absolutely protected, they were operating within the scope of their official duties and powers, and were immune from plaintiff's claims for civil damages based on state law tort claims of malicious prosecution and reckless or intentional infliction of emotional distress).